IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERIC J. BINDNER,

    Plaintiff,

    v.                                                                                                                  Civ. No. 21-492 GBW/SCY

STEVEN J. TRAUB, DDS d/b/a STEVEN J.
TRAUB ORAL & MAXILLOFACIAL
SURGERY,

    Defendant.

**ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFF'S MOTION TO COMPEL**

This matter comes before the Court on Plaintiff's Motion To Compel Full And Complete Answers To Plaintiff's First Set Of Discovery Requests To Defendant, filed May 9, 2022, Doc. 95. Plaintiff moves to compel "complete and full responses" to Plaintiff's discovery requests, challenging Defendant's response to various interrogatories, requests for production, and requests for admission. Doc. 95 at 1. Defendant opposes the relief requested, and also argues the motion should be denied summarily for failure to meet and confer. The Court will not deny the motion for failure to meet and confer. On its merits, the Court denies in part and grants in part the motion.

    A.    Meet and confer

Defendant argues that Plaintiff made no effort to meet and confer before filing his motion. Doc. 100 at 1-2. Plaintiff does not refute this contention but argues that counsel for Plaintiff "anticipated" having a phone call with Defendant's counsel on April 23, and that Defendant's counsel instead filed a motion to compel, cutting off the efforts to confer in good faith. Doc. 109 at 1.

As the Court examined at length in its June 29 Order Compelling Responses To Interrogatories, counsel disagree about whether a telephone call ever took place or whether one could have been productive. Doc. 118 at 4-5. The Court is doubtful that unsuccessful efforts to meet and confer over *Defendant's* motion should excuse *Plaintiff* from attempting to meet and confer on an entirely separate motion. The Court additionally notes that Defendant's answers at issue here were served on April 27, Doc. 89, so Plaintiff's counsel's anticipated call on April 23 could not have related to Defendant's yet-to-be-served answers. Further, Defendant's counsel, in conjunction with his allegations that Plaintiff's counsel misrepresented the occurrence of a conversation, insisted that future communications with Plaintiff's counsel be in writing. Doc. 91-5 at 2. This, of course, did not prevent Plaintiff's counsel from sending Defendant's counsel an email or letter in an attempt to resolve the discovery dispute. And, the meet and confer requirement contains no exception for relationships that have soured. Nonetheless, because the Court prefers to resolve this issue on the merits, because the Court has insufficient information to assess whether Defendant's counsel's refusal to communicate through conversation was justified, and because the Court excused Defendant from his requirement to have a conversation before filing a motion to compel, the Court declines to deny Plaintiff's motion for failure to meet and confer and instead proceeds to the merits.

    B.    <u>Insurance</u>

Plaintiff's Interrogatory No. 3 asked:

> Please list all insurance carriers with whom you were insured at the time you became accredited to act as a contract dental surgeon working with veterans through the VA healthcare system. If at any time any listed coverage lapsed or changed, please provide the dates that you notified the VA, or its designated representative, of the change in your professional liability insurance coverage.

Doc. 95-1 at 4-5. Also relating to insurance, Interrogatory No. 28 asked:

> Were you named or covered under any policy or policies of liability insurance at the time of the care and treatment alleged in the Complaint? If so, state for each policy the name of the insurance company, the policy number, the effective policy period, the maximum liability limits for each person or each occurrence, including umbrella and excess liability coverage and the named insured(s) under the policy.

*Id.* at 41. And Request for Production No. 19 asked:

> Please provide a copy of any and all insurance policies which provided liability insurance coverage for you at the time of the incident in question as identified in Interrogatory No. 28 above.

*Id.* at 59.

Defendant objected to each interrogatory and the request for production, stating they were "overbroad and unduly burdensome" because they asked him to "include all manner and forms of insurance which are irrelevant to this case; and, otherwise [are] vague and ambiguous because it requires him to guess what insurance Plaintiff is really interested in." *Id.* at 5; *see also id.* at 42, 59-60. Plaintiff moves to compel responses, arguing that these interrogatories and the request for production "simply ask[] for basis professional or other insurance coverage Defendant had at the time he was working with the VA System" because "Defendant has repeatedly claimed he does not have adequate funds to pay any meaningful amount of a judgment or settlement." Doc. 95 at 1, 3, 5.

The "insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment" against Defendant is clearly relevant and discoverable information. Fed. R. Civ. P. 26(a)(1)(A)(iv). However, the Court agrees with Defendant that Interrogatory Nos. 3 and 28 and Request for Production No. 19 were overbroad, because they did not ask for insurance which may be liable to satisfy a possible judgment in this action. They asked for *all* "insurance carriers with whom you were insured at the time you became accredited to act as a contract dental surgeon working with veterans through the VA healthcare system" and *all* "liability

insurance" policies. Doc. 95-1 at 4, 41, 59. They encompass, as Defendant suggests, car insurance or life insurance. Doc. 100 at 3.

Nonetheless, Plaintiff asks for clearly relevant information insofar as the requests pertain to professional liability insurance at the time of the incident in question. Defendant shall answer Interrogatory No. 28 and Request for Production No. 19 to the extent they request information on policies of professional liability insurance at the time of the care and treatment alleged in the Complaint. The Court denies the motion to compel with respect to Interrogatory No. 3 because it does not ask for insurance information at the time of the incident in question and because Plaintiff does not explain why insurance information outside this timeframe is relevant and proportional to the needs of this case.

      C.      <u>Prior sanction or adverse process</u>

Plaintiff's Interrogatory No. 5 asked:

> What HMO's, PPO's, or similar provider groups have you been a member of and has your patient care ever been subject to review, criticism, sanction or other adverse process by one of these groups?

Doc. 95-1 at 9.

Plaintiff's Interrogatory No. 6 asked:

> Have you ever been subject to sanctions by a Medicare review organization, an HMO, or any professional review organization; if so, please provide name of organization, date, jurisdiction, and type of sanction.

Doc. 95-1 at 10.

Defendant objected that these interrogatories were overbroad because the terms were undefined and they were not limited in time (Defendant has been a dentist for 40 years). Doc. 100 at 4-5. Plaintiff argues that "[w]ithout providing this information, Plaintiff cannot know whether Defendant has a history of negligent performance of the procedure he tried to perform on Plaintiff." Doc. 95 at 2.

4

A history of negligent performance may be relevant to Plaintiff's informed consent claim. The Court disagrees that "adverse process" or "sanction" are terms that are so unclear that Defendant cannot answer these interrogatories. "Adverse process" modifies the preceding terms and is easy to answer: whether a provider group ever subjected Defendant to process that was adverse to him regarding his patient care. Whether Defendant has ever been "sanctioned" by a professional review organization is an even clearer inquiry. The Court disagrees with Defendant's contention that these inquiries could encompass informal or unproven complaints. Applying common sense and the ordinary meaning of the terms, an allegation that was never investigated and led to no consequences is not an adverse process or a sanction.

The temporal scope is a more difficult question. In general, the broader in time a request is the less proportionate it will be to the needs of the case. The Court will not require Defendant to produce information older than ten years from the date of this Order. Thus, the Court grants in part and denies in part Plaintiff's request with respect to this interrogatory.

Plaintiff also moves to compel a response to Interrogatory No. 8, Doc. 95 at 2, which asked:

> Have you ever been subject to discipline, suspension, or other adverse actions in the course of providing dental care or treatment to any patients at any institution at which you have worked during your professional car[e]er? If so, please provide full details of each including the date or approximate date the claim was made, the name of the person bringing the claim, the identity of any law firm or attorney who assisted you in responding to the claim, whether or not the claim resulted in any type of litigation or dispute resolution, along with the claim number or case number and the outcome of the claim.

Doc. 95-1 at 12. However, Defendant *did* answer it:

> Dr. Traub construes this Interrogatory as asking for discipline, suspensions, or claims made against him by a private institution as opposed to a governmental regulatory body, e.g., the New Mexico Board of Dental Health Care. Dr. Traub, in approximately 1991, while operating at Presbyterian Hospital, was involved in a case where his patient, post motorcycle accident, started to slide off the operating table during bilateral total joint replacement surgery. The patient's change in

5

>position was the result of the CRNA's/Anesthesiologist's simultaneous efforts to take the patient's rectal temperature during the surgery Dr. Traub was performing. Dr. Traub was placed under supervision following the incident and 10 of his next cases were to be conducted under supervision.

Doc. 95-1 at 14. Plaintiff's motion does not acknowledge this answer and makes no effort to explain to the Court why it is incomplete or why further response should be compelled. Plaintiff's motion is therefore denied with respect to Interrogatory No. 8.

### D.     Investigations

Plaintiff's Interrogatory No. 11 asked:

>Please state the names and addresses of each person who has investigated the subject incident on your behalf, and specifically describe what they did by way of investigation, including the identity of persons interviewed, the documents reviewed and the date(s) of said investigation.

>In the alternative you may attach all reports or other documents generated by such investigations. (*Note: This interrogatory is not intended to seek the work product of your attorneys but is specifically addressed to any outside investigations conducted.)

Doc. 95-1 at 16.

Defendant objected, and responded despite the objection:

>However, because the parenthetical qualifier to this Interrogatory suggests that Plaintiff does not intend to obtain documents or reports generated by Dr. Traub's attorneys and agents, Dr. Traub has not undertaken to incur the time and expense of preparing a privilege log that might concern documents or reports generated or obtained by Dr. Traub's attorneys and their agents.

>Dr. Traub states that his attorneys and their agents have investigated the subject matter of the case. In addition, Dr. Traub states, upon information and belief, that agents or representative of the New Mexico Board of Dental Health Care may have performed an investigation into the allegations in Plaintiff Complaint filed before the Board. Plaintiff has, upon information and belief, already obtained documents that the Board may have obtained in the course of its investigation.

Doc. 95-1 at 16-17.

In his motion to compel, Plaintiff argues that this interrogatory "is another basic interrogatory that simply asks the Defendant to identify any person who has investigated the acts

6

and events in question." Doc. 95 at 2. "At this stage, the Interrogatory does not ask for copies of the result of the investigation, but simply asks for the identity of the investigators so that any further claim of privilege can be addressed." *Id.*

Defendant responds that he provided a privilege log that identifies the names of the persons who have investigated this matter on behalf of Defendant's counsel. Doc. 100 at 5. Whether Defendant provided a privilege log, however, is beside the point: the interrogatory specifically clarified that it was asking for non-privileged information. Defendant answered that there is no responsive non-privileged/non-work product information, i.e., the investigation was conducted by attorneys or their agents. Plaintiff does not acknowledge this answer or explain why it is insufficient. Plaintiff does not explain how there is any further information to compel. Therefore, the Court denies Plaintiff's motion with respect to this interrogatory.

E.     Statements

Plaintiff moves to compel full responses to Interrogatory Nos. 13 and 14. Doc. 95 at 2.

Interrogatory No. 13 asks:

> Has any person or potential witness made any statements in any form to any person regarding the events or occurrences alleged in Plaintiffs Complaint? If so, please provide the names and addresses of the person to whom the statement was made, the date of the statement, its form whether written, oral or recorded or to a stenographer, its contents; and the names and addresses of the people who presently have control, possession or custody of the statements.
>
> In the alternative, you may attach a copy of each such statement to your Answers to these Interrogatories.

Doc. 95-1 at 25. Interrogatory No. 14 asks:

> Have you, your attorney, your insurance carriers, or anyone acting on your or their behalf obtained any statements in any form from any person regarding any of the events or occurrences alleged in the Complaint? If so, please provide the names and addresses of the persons from whom the statements were obtained, the date of the statement and the name, address and employer of the person taking it, a summary of its contents; and the names and addresses of the people who presently have control, possession or custody of the statements.

7

>In the alternative, you may attach a copy of each such statement to your Answers to these Interrogatories.

*Id.* at 25-26.

In response to both interrogatories, Defendant "refer[red] Plaintiff to the statements contained in records and document previously produced in the case." Doc. 95-1 at 25, 26. Plaintiff argues: "This is an inadequate response to the Interrogatory which asks for the identity of the persons involved in making and receiving any statements regarding the events and occurrences alleged in the Complaint along with the date of the statement, its form and the name of the persons who have possession or custody of the same." Doc. 95 at 2. Defendant argues it would be unduly burdensome to comb through discovery and find all statements within. Doc. 100 at 6-7. But Defendant did not state any objections to Interrogatories Nos. 13 and 14 when answering them, Doc. 95-1 at 25, 26, and so any objections are waived.

The Court agrees these responses are invalid. A party answering discovery may not refer "to previously produced or identified documents in lieu of providing a written answer." *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680-81 (D. Kan. 2004); *see also Trueman v. New York State Canal Corp.*, No. 09cv49, 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010) ("Answers to interrogatories that incorporate other documents by reference are strongly disfavored. Reference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive."); *Doe v. White*, No. 08cv1287, 2009 WL 3098724, at *3 (C.D. Ill. Sept. 22, 2009) (the answering parties "ought to be able to provide a more focused response than their blanket, vague reference to all discovery produced thus far").

The Court grants the motion to compel in this respect and orders Defendant to answer Interrogatory Nos. 13 and 14 without incorporating other documents by reference. As the interrogatories state on their face, however, Defendant may answer by attaching a copy of each such statement to his answers.

F. <u>Experts</u>

Interrogatory No. 16 asked Defendant to identify expert witnesses. Defendant initially stated he had not made a decision as to which experts to call. Doc. 95-1 at 34. In supplemental responses, Defendant answered the interrogatory. Doc. 100-3 at 2. Defendant served these supplemental responses on May 6, Doc. 92, three days prior to the filing of Plaintiff's motion. Yet Plaintiff makes no argument that this supplement was untimely or otherwise insufficient. The Court denies the motion to compel on this topic.

G. <u>Dental license</u>

Plaintiff moves to compel a response to Interrogatory No. 30, which asks:

> Has your license to practice dental medicine ever been suspended or have any disciplinary action ever been taken against you in reference to your license? If so, state the specific disciplinary action taken, the date of the disciplinary action, the reason for the disciplinary action, the period of time for which the disciplinary action was effective and the name and address of the disciplinary entity taking the action.

Doc. 95-1 at 42-43. Defendant objected, but answered the interrogatory anyway:

> In answer to this Interrogatory, Dr. Traub construes this Interrogatory as asking for a list of administrative claims, within the last 10 years, that were reviewed by the New Mexico Board of Dental Health Care or similar regulatory agency that resulted in the suspension of his license or, in the alternative, some action or disposition beyond the mere filing of a claim or complaint.
>
> With this qualification in mind, Dr. Traub identifies the following:
>
> - [List of three claims]

9

*Id.* at 44-45. Plaintiff acknowledges this answer, but asserts that "it is unclear whether this is a complete answer or not." Doc. 95 at 3. The Court disagrees; the answer is very clear. Defendant objected, then explained which portion of the interrogatory Defendant was answering despite the objection, and went on to list three claims within the last ten years. Defendant verified the answers under oath. Doc. 95-1 at 63. The Court has no reason to suspect that Defendant gave incomplete or incorrect answers under oath, and Plaintiff offers none.

If Plaintiff's issue is actually with the manner in which Defendant narrowed the interrogatory before answering it, Plaintiff's motion does not say so. Therefore, the Court denies the motion to compel with respect to this interrogatory.

H.  Supernumerary interrogatories

The Court's scheduling order permitted 30 interrogatories by each party, Doc. 21 at 1, and Plaintiff served 34 interrogatories. Defendant objected to interrogatories 31 through 34 on this basis. Doc. 95-1 at 45-52. Plaintiff argues that responding to the first 30 and objecting to the remainder was improper. Doc. 95 at 3-4.

The majority rule appears to be that it is improper for the answering party to pick and choose which interrogatories he wishes to answer. "[T]he objecting party is to either seek a protective order and not answer the requests at issue or answer up to the numerical limit and object to the remaining requests without answering." *Lowery v. County of Riley*, No. 04cv3101, 2009 WL 648928, at *3 (D. Kan. Mar. 12, 2009) (collecting cases). That is, a party should not skip over Interrogatories 1 and 2 and respond to Nos. 3-14. *Id.* This rule is sensible and easy for parties and courts to apply. And of course, Defendant complied with this rule by answering the first 30 and objecting to Nos. 31-34.

The District of New Mexico, however, has conflicting guidance about how the answering party should respond in this situation, leaving parties in something of a quagmire. Plaintiff relies on *Allahverdi v. Regents of Univ. of New Mexico*, in which Judge Browning stated:

> When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for protective order. The responding party should not answer some interrogatories and object to the ones to which it does not want to respond. By answering some and not answering others, the Defendants waived this objection.

228 F.R.D. 696, 698 (D.N.M. 2005). In a subsequent opinion, Judge Khalsa opined that *Allahverdi* may make sense at the outset of a case, when there is still time to resolve objections, re-serve the discovery, and file discovery motions before the deadline. *Equal Emp. Opportunity Comm'n v. New Mexico, Corr. Dep't*, No. 15cv879 KG/KK, 2016 WL 9777238, at *3 (D.N.M. Sept. 30, 2016) (hereinafter *EEOC*). But there is a point at which "compliance with *Allahverdi* . . . has delayed discovery beyond what was required to reasonably limit Plaintiff's discretion in choosing which interrogatories to answer." *Id.* She instructed the parties in that case:

> In future, should a party to this matter believe that a supernumerary objection is warranted, that party is instructed to either seek a protective order and not answer the requests at issue, or answer up to the numerical limit and object to the remaining requests without answering. This procedure will prevent the objecting party from randomly (or strategically) choosing which interrogatories to answer, but, absent a motion for protective order, will also allow the party serving discovery to receive responses to some portion of its requests.

*Id.*

To begin with, the Court notes that both *Allahverdi* and *EEOC* dealt with a disagreement over whether a party had served too many interrogatories. *See EEOC*, 2016 WL 9777238, at *3. A party may not bypass the limit on interrogatories by including several subparts on discrete subjects within one interrogatory; such behavior will result in each subpart being counted as a separate interrogatory. *See id.* (citing *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664

11

(D. Kan. 2004)). But this is not a straightforward problem and reasonable minds can differ over when subparts are discrete. *Id.* As such, both *Allahverdi* and *EEOC* were concerned with one party *unilaterally* deciding how many interrogatories had been served under the subparts-counting rule, and then responding without consulting with the other party on the topic. *See id.*; *see also Allahverdi*, 228 F.R.D. at 698 (finding that the propounding party made a good-faith effort to comply with the numerical limit on interrogatories).

The Court doubts either case applies to the current situation, where Plaintiff straightforwardly served 34 interrogatories when the limit was 30. In any event, the Court would agree with Judge Khalsa that there is a point at which the *Allahverdi* rule does not fit the procedural posture of a case, and Defendant is correct that this case reached that point. Plaintiff served his first set of discovery on March 28. Doc. 77. Defendant's answers were due April 27, with a discovery close date of May 7 and a trial date of August 8. This left no time for Plaintiff to serve multiple rounds of interrogatories. Although the best path would have been conferring with Plaintiff over the issue as soon as the interrogatories were served because they so clearly exceeded the limit, Defendant's policy of answering the first thirty interrogatories and objecting to the remainder was not so unreasonable as to waive his objection.

Plaintiff's current motion does not offer an explanation for serving the supernumerical interrogatories or even at this late date request the Court find good cause to permit Plaintiff to exceed the numerical limit in the scheduling order. As Plaintiff never sought, much less received, a stipulation or Court order to exceed the numerical limit of interrogatories, the Court denies the motion to compel with respect to Interrogatory Nos. 31-34.

I.  <u>Expert witness communications</u>

In Request for Production No. 16, Plaintiff requested:

> Please provide copies of all documents provided by you or your attorneys to any person whom you expect to call or may call as an expert witness at the trial of this matter or whom you have retained or specifically employed in anticipation of litigation or in preparation for trial.

Doc. 95-1 at 54. Defendant objected to the extent this request called for "documents that are protected by the attorney work product doctrine, trial preparation protection for draft reports or disclosures, and trial preparation communications between a party's attorneys and their expert witnesses." *Id.* Defendant provided a privilege log pertaining to communications with his consulting expert. Doc. 100-1. Defendant produced responsive documents related to communications exchanged with treating physicians. Doc. 95-1 at 54-55. After determining that Defendant would be retaining two expert witnesses for trial, Defendant supplemented his document production and submitted a supplemental privilege log. Doc. 100 at 11; Doc. 100-2.[1]

Plaintiff argues that documents such as "e-mail from Defendant's counsel Wilkey and from Defendant's expert regarding discussions on 'analysis and potential opinions'" are discoverable. Doc. 95 at 4. Plaintiff contends that "[t]his is precisely the type of discovery that is routinely permitted so that the Court and the jury can assure themselves that the opinions offered are those of the experts, not of the Defendant's attorneys." *Id.* In support, Plaintiff engages in a lengthy discussion that does not pertain to communications between attorneys and expert witnesses. *E.g.*, *id.* at 7 (arguing that "the expert's testing of material involved in litigation, and notes of any such testing" and "inquiry about communications the expert had with *anyone other than the party's counsel*" would be discoverable) (emphasis added). Plaintiff further argues that:

> The protection for communications between the retained expert and "the party's attorney" should be applied in a realistic manner, and often would not be limited to communications with a single lawyer or a single law firm. For example, a party

---

[1] In reply, Plaintiff challenges the sufficiency of the privilege logs. Doc. 109 at 2-3. This argument was not raised in the initial motion and is therefore waived. The Court will not consider it.

may be involved in a number of suits about a given product or service, and may retain a particular expert witness to testify on that party's behalf in several of the cases. In such a situation, the protection applies to communications between the expert witness and the attorneys representing the party in any of those cases. Similarly, communications with in-house counsel for the party would often be regarded as protected even if the in-house attorney is not counsel of record in the action. Other situations may also justify a pragmatic application of the "party's attorney" concept.

*Id.* at 8.

The relevance of this argument is not immediately clear. In fact, Plaintiff appears to be conceding that the documents Defendant withheld from production—"communications between the retained expert and 'the party's attorney'"—are not discoverable.

In any event, regardless of what Plaintiff does or does not concede, the only document Plaintiff specifically discusses in his motion to compel—"e-mail from Defendant's counsel Wilkey and from Defendant's expert regarding discussions on 'analysis and potential opinions'"—is privileged and not discoverable. Fed. R. Civ. P. 26(b)(4)(C). The motion to compel is denied.

### J. Request for Admission

Plaintiff's Request for Admission No. 1 stated:

Please admit that at the time you became accredited to provide dental services to veterans though a Provider Agreement with the Veterans Administration you maintained professional liability insurance in accordance with the "Professional Liability Insurance Requirement" for such providers.

RESPONSE: Denied. Objection. This Request is unintelligible.

Doc. 95-1 at 60.

Plaintiff argues that "Defendant should be required to admit or deny the Request." Doc. 95 at 5. The problem with this position is that Defendant *did* deny the request. Defendant argues his denial was sufficient and the objection was inserted out of an abundance of caution. Doc. 100 at 14. Plaintiff offers no legal authority preventing Defendant from both denying and objecting to

a request for admission. In any event, because Defendant denied the request for admission, there is no further answer to compel. The motion to compel with respect to this request for admission is denied.

## CONCLUSION

THEREFORE, it is ordered that:

1. Plaintiff's Motion to Compel is GRANTED IN PART and DENIED IN PART.

2. Defendant's objections are overruled in part with respect to Interrogatory No. 28 and Request for Production No. 19. Defendant shall answer Interrogatory No. 28 and Request for Production No. 19 to the extent they request policies of professional liability insurance at the time of the care and treatment alleged in the Complaint.

3. Defendant's objections are overruled in part with respect to Interrogatory Nos. 5 and 6. Defendant shall answer these interrogatories, limited to responsive information ten years prior to the date of this Order.

4. Defendant shall answer Interrogatory Nos. 13 and 14 without incorporating other documents by reference. As the interrogatories state on their face, Defendant may answer by attaching a copy of each such statement to his answers.

5. Defendant has 14 days from the date of this Order to respond as outlined above.

6. The remaining requests in Plaintiff's Motion to Compel are DENIED.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE