IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERIC J. BINDNER,

     Plaintiff,

v.                                                  Civ. No. 21-492 GBW/SCY

STEVEN J. TRAUB, DDS, *doing
business as* STEVEN J. TRAUB
ORAL & MAXILLOFACIAL SURGERY,

     Defendant.

## ORDER GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S INFORMED CONSENT CLAIM

THIS MATTER comes before the Court on Defendant's Motion for Summary Partial [sic] Judgment on Negligent Informed Consent Claim.  *See doc. 93.*  Having reviewed the Motion and its attendant briefing, *see docs. 99, 101, 113, 119*, and being fully advised in the premises, the Court GRANTS the Motion and DISMISSES Plaintiff's informed consent claim WITH PREJUDICE.

## I.    BACKGROUND

This case arises from dental procedures that Defendant performed on Plaintiff on May 30, 2018, and injuries that Plaintiff allegedly incurred from them.  *See doc. 1* at ¶¶ 5-14.  Plaintiff asserts claims of negligence against Defendant for "fail[ing] to act as a reasonably well qualified dentist would act under similar circumstances" when treating

him and "fail[ing] to provide … all [the] information that a reasonably prudent patient would have wanted to know before agreeing to … treatment." *See id.* at ¶¶ 11-12.[1]

On May 6, 2022, Defendant filed the instant Motion for Partial Summary Judgment on Plaintiff's negligence claim for lack of informed consent. *See doc. 93.* As Plaintiff initially "d[id] not know to which portion, if any, of his Complaint" the Motion applied, *see doc. 99* at 2, the Court explained the differences between negligence claims for improper treatment and those for lack of informed consent and directed Plaintiff to respond to the Motion if his Complaint contained a negligence claim under the latter theory, *see doc. 106.* Plaintiff clarified that he had pled an informed consent claim and asked the Court to defer consideration of the Motion under Federal Rule of Civil Procedure 56(d) until he had received the transcripts for his deposition. *See doc. 111.* The Court denied the Rule 56(d) request since Plaintiff could reproduce content from his deposition in an affidavit. *See doc. 112* at 2-3. On June 22, 2022, Plaintiff responded to the merits of the instant Motion. *See doc. 113.* Briefing was complete on this Motion on June 29, 2022, *see doc. 120,* with the filing of Defendant's reply, *see doc. 119.*

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[1] Plaintiff's Complaint for Damages Caused by Medical Negligence also contained a battery claim, *see doc. 1* at ¶ 13, which the Court dismissed for not stating a claim on September 10, 2021, *see doc. 15* at 4-6.

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Where, as here, the burden of persuasion at trial would be on the nonmoving party, the movant may carry its initial burden … by 'demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.'" *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019) (cleaned up) (quoting *Celotex*, 477 U.S. at 331). Once the movant meets its burden, the non-moving party is required to provide evidence for specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324. Summary judgment is appropriate only "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998) (cleaned up) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When making this determination, the Court keeps several principles in mind. First, while the Court "must examine the factual record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party," *id.*, that party's

"version of the facts must find support in the record," *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).  Second, the Court's role is not to weigh the evidence, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial.  *See Liberty Lobby*, 477 U.S. at 249.  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  Finally, the Court cannot decide any issues of credibility.  *Liberty Lobby*, 477 U.S. at 255.

## III.     FINDINGS OF UNDISPUTED MATERIAL FACT

Based on the record before it, the Court finds the facts below material and without a genuine dispute.  The Court has not made findings regarding the content of the parties' communication before the procedure on May 24, 2018, or whether Defendant disclosed the "possible complications"[2] listed on the consent form as these matters are not essential to the Court's resolution of Defendant's Motion.

---

[2] The Court takes no position about whether the "possible complications" listed on the consent form, *see doc. 93-2*, are risks of the dental procedures that Defendant performed on Plaintiff.

1. On May 30, 2018, Defendant performed dental extraction and implant procedures on Plaintiff, removing two wisdom teeth and inserting four dental implants. *See doc. 1* at ¶ 5; *doc. 17* at ¶ 5.

2. Defendant obtained Plaintiff's consent for the extraction and implant procedures before performing them. *See doc. 93-1* at ¶¶ 10, 13; *doc. 93-2*.

3. Before consenting to the procedures, Plaintiff had the opportunity to ask Defendant questions. *See doc. 93-1* at ¶ 11.

Plaintiff denies having the opportunity to ask Defendant questions but cites to no evidence to support his denial. *See doc. 113* at 2. The sworn statements in Plaintiff's affidavit (the only evidence he produces to support his informed consent claim) do not discuss whether Plaintiff had the opportunity to question Defendant about these procedures or otherwise refute Defendant's sworn statement that he asked Plaintiff whether Plaintiff had any questions for him. *See doc. 113-1*. Plaintiff, therefore, has not borne his burden of producing evidence disputing this fact. *See* Fed. R. Civ. P. 56(c)(1) (requiring a party "asserting that a fact … is genuinely disputed" to support the assertion by citing to materials in the record).

4. Before consenting to the procedures, Plaintiff did not ask Defendant about his experience as an oral surgeon, whether he had professional liability

insurance, or whether former patients had sued him for malpractice.  *See doc.*

*93-1* at ¶ 12.

Plaintiff denies that he did not ask Defendant about his experience, his liability

insurance, and previous malpractice suits against him but cites to no evidence to

support this denial or show that he questioned Defendant about these topics.  *See doc.*

*113* at 2.  The sworn statements in Plaintiff's affidavit do not assert that he asked

Defendant questions of this nature or otherwise refute Defendant's sworn statement

that Plaintiff asked him no such questions.  *See doc. 113-1.*  Plaintiff, therefore, has not

borne his burden of producing evidence disputing this fact.  *See* Fed. R. Civ. P. 56(c)(1)

5.  Before obtaining Plaintiff's consent for the procedures, Defendant did not

provide Plaintiff with information about the tools that he would use to

perform these procedures, his experience and training in these procedures,

his lack of professional liability insurance, or his inability to obtain such

insurance due to the number of prior medical malpractice claims against him.

*See doc. 113-1* at ¶¶ 2-3, 5.

Defendant's contention that these non-disclosures "require expert … testimony,"

*see doc. 119* at 6, overstates the need for such testimony.  Expert testimony is "ordinarily

indispensable" to establish any duty that Defendant had to make the above disclosures;

but lay testimony is sufficient to establish that he did not make them.  *See Gerety v.*

*Demers*, 589 P.2d 180, 195 (N.M. 1978).

## IV.   ANALYSIS

An informed consent claim arises from a medical provider's breach of a duty to disclose information to a patient that causes the patient injury.  *See id.* at 192. Jurisdictions disagree about the standard for that duty.  Under the traditional, "professional" approach, a provider owes a patient a duty "to disclose only such risks that a reasonable practitioner of like training would have disclosed in the same or similar circumstances."  *Willis v. Binder*, 596 F.3d 1244, 1254 (10th Cir. 2010) (quoting *Roybal v. Bell*, 778 P.2d 108, 112 (Wyo. 1989)) (applying Wyoming law); *see also Roberts v. Young*, 119 N.W. 2d 627, 630 (Mich. 1963).  Under the contemporary, "materiality" approach, adopted by New Mexico, the duty owed by a provider to a patient is "to disclose the factors that might reasonably influence the patient in his decision."[3]  *Gerety*, 589 P.2d at 192; *see also Canterbury v. Spence*, 464 F.2d 772, 786-87 (D.C. Cir. 1972).  As for causation, New Mexico (like most other jurisdictions) follows "an objective test based upon what a prudent person in plaintiff's position would have decided if suitably informed of the significant perils involved" under which causation exists "only if the non-disclosed facts would have altered a reasonably prudent person's decision to undergo treatment."  *Gerety*, 589 P.2d at 194.

---

[3] New Mexico recognizes exceptions to this duty for emergencies or a patient who is unconscious or otherwise incapable of consenting.  *See Gerety*, 589 P.2d at 194-95; *Crouch v. Most*, 432 P.2d 250, 254 (N.M. 1967).  Neither is applicable here.

Plaintiff directs the Court to several procedure-specific and provider-specific factors that Defendant either did not disclose when obtaining Plaintiff's consent for the dental procedures or whose disclosure is disputed.  *See doc. 113* at 3-4.  No duty, though, exists to disclose two of these factors as a matter of law and Plaintiff has not produced the expert evidence required to establish the duty elements of an informed consent claim for the remaining non-disclosures.  Nor has Plaintiff produced the expert evidence needed to establish the causation elements of an informed consent claim for any of the non-disclosures.  Therefore, Defendant is entitled to summary judgment on Plaintiff's informed consent claim.

A.   DUTY

Based on the record before the Court, as a matter of fact or law, Defendant did not owe Plaintiff a duty to disclose any of the procedure-specific and provider-specific factors Plaintiff identifies.  Determining whether Defendant owed Plaintiff a duty to make these disclosures requires the Court to address two interrelated issues: (i) what factors might have influenced the decision of a reasonable patient in Plaintiff's situation to authorize Defendant to perform the extraction and implant procedures; and (ii) what evidence, expert or otherwise, must Plaintiff produce to show that potential influence.  Starting its analysis with the procedure-specific factors—the issue on which New Mexico law is more settled—the Court reaches the following conclusions: (i) knowledge of one procedure-specific factor and one provider-specific factor identified by Plaintiff

would not influence the decision of a reasonable prudent patient to consent to the

dental procedures; and (ii) expert testimony is required to show potential influence for

the remaining procedure-specific and provider-specific factors identified by Plaintiff

(assuming that the New Mexico Supreme Court were even inclined to expand a

provider's duty to disclose to include provider-specific factors).

> 1. *Procedure-Specific Factors: Tools Used in the Procedure, "Possible*
>    *Complications" on the Consent Form, and Potential for Negligence*

In New Mexico, a medical practitioner has a duty to disclose "inherent potential

hazards of the proposed treatment, any alternatives to that treatment, and the results

likely if the patient remain[s] untreated." *Gerety*, 589 P.2d at 192. This duty does not

include hazards that a patient has already discovered or those "of which persons of

average sophistication are aware." *See id.* at 194. Nor does it reach every risk arising

from a procedure. *See id.* at 193. Rather, it extends to only those risks to which "a

reasonable person, in what the physician knows or should know to be the patient's

position, would be likely to attach significance," *Canterbury*, 464 F.2d at 787; *see also*

*Gerety*, 589 P.2d at 194. "There is no bright line separating the significant from the

insignificant; the answer in any case must abide a rule of reason … Whenever non-

disclosure of particular risk information is open to debate by reasonable-minded men,

the issue is for the finder of the facts." *Gerety*, 589 P.2d at 194 (quoting *Canterbury*, 464

F.2d at 788).

As will be emphasized throughout this order, "experts are ordinarily indispensable" to establish duty.  *See id.* at 195; *cf. Woods v. Brumlop,* 377 P.2d 520, 525 (N.M. 1962) (not requiring an expert to establish the risks inherent in a procedure where a physician knowingly misrepresents these risks to a patient).[4]  "[M]edical facts are for medical experts," *Gerety,* 589 P.2d at 195 (quoting *Canterbury,* 464 F.2d at 792), so an expert is generally needed to "identify and elucidate for the fact-finder the risks of therapy and consequences of leaving existing maladies untreated," *see id.*

Plaintiff contends that Defendant owed him a duty to disclose the following procedure-specific factors when obtaining his consent for the dental procedures, *see doc. 113* at 4-5: (i) the procedures' use of a hammer and other tools, *see doc. 113-1* at ¶ 3; (ii) the procedures' "possible complications," as listed on a consent form bearing Plaintiff's name, *see id.* at ¶ 4 (referencing *doc. 93* at ¶ 8), including the possibility that the implants may fail to integrate, *see id.* at ¶ 2.d; and (iii) the possibility that the implants might be placed too close together and fail, *see id.* at ¶ 2.c.  Plaintiff, though, lacks the expert evidence needed to demonstrate that Defendant owed him a duty to make either of the

---

[4] In *Gerety v. Demers,* 589 P.2d 180 (N.M. 1978), the New Mexico Supreme Court abrogated *Woods v. Brumlop,* 377 P.2d 520 (N.M. 1962), "[t]o the extent that *Woods* may hold that it is never necessary to have medical testimony on the question of the quantum of information to be given [to] a patient about the dangers of medical procedures in order to obtain the consent to an operation."  *See* 589 P.2d at 193 (emphasis added) (confining *Woods* to circumstances involving misrepresentation, an issue that is not present here).

first two disclosures and Defendant owed no duty to Plaintiff to make the third

disclosure as a matter of law.

      i.    NON-DISCLOSURE OF TOOLS

Plaintiff has not met his burden of production to establish that Defendant

owed him a duty to disclose the tools used to perform the dental procedures, as

he offers no expert evidence that using these tools posed him a risk.  New Mexico

courts have not yet addressed whether a provider's duty to disclose includes

discussing the tools used in a procedure.  Therefore, the Court must predict how

the New Mexico Supreme Court would answer this question.  *See Stickley v. State*

*Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007).  In doing so, the

Court considers the jurisprudence of other jurisdictions on this issue, as the New

Mexico Supreme Court has found this jurisprudence persuasive when

addressing open questions of law in the informed-consent context.  *See, e.g.*,

*Gerety*, 589 P.2d. at 191-95.

Among courts applying the materiality standard, most of those that have

addressed whether providers have a duty to disclose the equipment used to

perform a procedure hold that such a duty exists where use of the equipment

poses a risk to the patient.  *See Didonato v. Rothchild*, 842 N.E. 2d 10, 2006 WL

266110, at *2 (Mass. App. Ct. Feb. 3, 2006) (unpublished table decision); *Lynch v.*

*Brookside Obstetrics & Gynecology Assocs.*, 29 Conn. L. Rptr. 186, 2000 WL 1995285,

at *3 (Conn. Super. Ct. Dec. 13, 2000); *Villanueva v. Harrington*, 906 P.2d 374, 376-77 (Wash. Ct. App. 1995).  *But see Sinclair ex rel. Sinclair v. Block*, 633 A.2d 1137, 1140-41 (Pa. 1993) (holding that a provider has no duty to disclose the use of forceps to facilitate natural delivery as "the informed consent doctrine does not apply to the natural delivery process").  These courts, though, require expert testimony to establish that risk.  *See Didonato*, 2006 WL 266110, at *2; *Villanueva*, 906 P.2d at 376-77.

The Court sees no reason to depart from these courts' jurisprudence, as it aligns with the New Mexico Supreme Court's analysis of the duty to disclose in *Gerety v. Demers*, 589 P.2d 180 (N.M. 1978).  There, the New Mexico Supreme Court held that "full disclosure" of all aspects of a proposed medical procedure is "prohibitive and unrealistic."  *See Gerety*, 589 P.2d at 193.  As noted earlier, it limited the duty to disclose to factors "that might reasonably influence the patient in his decision," *see id.* at 192-93, and assessed influence based on whether the factor poses or presents information about a risk that a reasonable patient would deem significant, *see id.* at 192-94.  It also held that expert testimony was "ordinarily indispensable to identify and elucidate [this] risk[,]" *see id.* at 195, and abrogated earlier precedent to the extent that it "may hold that it is never necessary to have medical testimony on the question of the quantum of

information to be given [to] a patient about the dangers of medical procedures in order to obtain the consent to an operation," *see id.* at 193.

Therefore, Defendant only had a duty to disclose the use of "a hammer or other tools to pound on the bones in [Plaintiff's] mouth," *see doc. 113-1* at ¶ 3, if using these tools posed Plaintiff a risk that a reasonable patient would deem significant.  Plaintiff's expert offers no opinions about risks arising from using these tools in the extraction and implant procedures.  *See doc. 93-3* (initial expert report); *doc. 93-4* (first supplemental expert report); *doc. 93-5* (second supplemental expert report).  Therefore, Plaintiff has not borne his burden of producing sufficient evidence to establish that Defendant had a duty to disclose that he would use a hammer and other tools to pound on the bones in Plaintiff's mouth during the dental procedures.

### ii.   Non-Disclosure of "Complications" Listed on the Consent Form

Similarly, Plaintiff has not met his burden of production to establish that Defendant owed him a duty to disclose the "possible complications" listed on the consent form.  Conflicting evidence exists in the record about whether Defendant informed Plaintiff of these "complications."  *Compare doc. 93-1* at ¶ 9 (Defendant's sworn statement that he disclosed these "complications"), *and doc. 93-2* (consent form bearing

Plaintiff's signature,[5] listing these "[p]ossible complications," and acknowledging that

they "have been noted"), *with doc. 113-1* at ¶ 4 (Plaintiff's sworn statement that he "was

not warned of all these things").  Even if a factfinder could reasonably conclude from

this evidence that Defendant did not disclose these "complications" to Plaintiff, Plaintiff

fails to offer the expert evidence needed to show that Defendant had a duty to make

this disclosure.

 Again, in New Mexico, "medical facts are for medical experts," who "are

ordinarily indispensable to identify and elucidate for the fact-finder the risks of

therapy."  *Gerety*, 589 P.2d at 195.  Plaintiff's expert offers no opinions about the risks of

the procedures undergone by Plaintiff, let alone opinions that these risks include (i)

numbness of the upper lip, teeth, or tongue; (ii) abscess formation and infection; (iii)

bleeding; (iv) damage to adjacent teeth; (v) fracture of roots; (vi) fracture of the jaw; (vii)

bruising of the skin; (viii) pain; (ix) difficulty in eating; (x) opening into the maxillary

sinus or nose; (xi) swelling; (xii) nausea and vomiting; (xiii) phlebitis or irritation of

blood vessels; (xiv) prolonged drowsiness; and (xv) failure of an implant to integrate.

*See doc. 93-3*; *doc. 93-4*; *doc. 93-5*.

---

[5] The Court finds that the fact that Plaintiff signed the consent form is not genuinely disputed.  Defendant states in his affidavit that "[o]n May 30, 2018, prior to starting any procedure, Plaintiff executed a Consent for Surgery Form …."  *Doc. 93-1* at ¶ 13.  Plaintiff does not deny signing that form.  *See doc. 113-1*.  Rather, he states in his affidavit that he does not "remember signing any consent form," and that he does not "believe" that he signed the form in *doc. 93-2*.  *See id.* at ¶¶ 4, 6.  Plaintiff's inability to recall signing the form and his lack of certainty about whether he did so do not establish a genuine issue of fact about whether he signed the form.  *See Patterson v. Van Wiel*, 570 P.2d 931, 934 (N.M. Ct. App. 1997) (holding that "lack of memory is synonymous with silence," which does not create a genuine dispute of fact).

Expert testimony is required to show that the risks of the procedures undergone by Plaintiff include the "possible complications" on the consent form since these risks fall outside "the realm of the common knowledge of the average person" where New Mexico courts do not require expert testimony to establish duty. *Cf. Toppino v. Herhahn*, 673 P.2d 1297, 1300-01 (N.M. 1983) (holding that duty in a negligent treatment case could be established without expert evidence where a physician misplaced a breast implant five times, miscalculated its proper size, and another surgeon placed the implant correctly after a single procedure since an average person knows that an implant "should balance its healthy counterpart in size and location"); *Helfferich v. Corr. Med. Servs., Corizon*, No. 32,749, 2013 WL 7752644, at *2 (N.M. Ct. App. Dec. 9, 2013) (holding that duty in a negligent failure to treat case could be established without expert evidence where a dentist did not treat cavities that he knew a patient to have for more than year notwithstanding the patient's persistent complaints of pain and requests for treatment).[6] As Plaintiff's expert does not state that the "possible complications" on the consent form are risks of the extraction and implant procedures, Plaintiff lacks sufficient evidence to establish that Defendant owed him a duty to disclose them.

---

[6] If it were common knowledge that the risks of the dental procedures undergone by Plaintiff include the "possible complications" on the consent form such that a lay person could testify to them, Defendant would have no duty to disclose the "possible complications" since providers have no duty to disclose the procedure-specific risks "of which persons of average sophistication are aware." *See Gerety*, 589 P.2d at 194.

iii.    NON-DISCLOSURE OF POTENTIAL NEGLIGENT PLACEMENT OF IMPLANTS

Finally, Defendant had no duty to inform Plaintiff that he might place implants too close together, causing them to fail.  This non-disclosure is synonymous with not informing Plaintiff that Defendant might perform the implant procedure negligently or about the hazards of such negligence.  New Mexico courts have yet to consider whether a medical provider has a duty to inform a patient about the possibility for negligence or the risks arising from it.  But every court that has considered these issues has rejected the existence of these duties.  *See Gilmartin v. Weinreb*, 735 A.2d 620, 625 (N.J. Super. Ct. App. Div. 1999); *Holt v. Nelson*, 523 P.2d 211, 241 (Wash. Ct. App. 1974); *Martin v. Stratton*, 515 P.2d 1366, 1369 (Okla. 1973); *Mallett v. Pirkey*, 466 P.2d 466, 470 (Colo. 1970); *Mull v. Emory Univ., Inc.*, 150 S.E. 2d 276, 292 (Ga. Ct. App. 1966).  Given the inclination of the New Mexico Supreme Court to follow majority rules for informed consent claims, *see Gerety*, 589 P.2d at 193-95, the Court finds no reason to believe that it would not adopt the unanimous rule here.  Therefore, Defendant had no duty to inform Plaintiff that he might place implants too close together or that improper placement could cause the implants to fail.

2.  *Provider-Specific Factors: Lack of Insurance, Need for More Training, Availability of More Skilled Providers, and Inability to Renew Insurance Due to Previous Malpractice Claims*

Moving on to a duty to disclose provider-specific factors, New Mexico courts have not reached the issue of whether the duty to disclose extends to provider-specific

circumstances.  *Cf. Gerety*, 589 P.2d at 192 (illustrating the duty to disclose by listing

procedure-specific information); *Garcia v. Coffman*, 946 P.2d 216, 222-23 (N.M. Ct. App.

1997) (suggesting in dicta that an informed consent claim could arise from a doctor not

informing a patient that his treatment scheme sought to maximize profit rather than

care when recognizing a claim in equity for breach of fiduciary duty for this non-

disclosure).  Therefore, like the duties to disclose tools and the possibility of negligence

analyzed above, the Court's task is to determine how the New Mexico Supreme Court

would rule on this issue.  *See Stickley*, 505 F.3d at 1077.  While resolving this issue, the

Court again considers the jurisprudence of other jurisdictions, as the New Mexico

Supreme Court has found such jurisprudence persuasive when addressing open

questions of law in the informed consent context.  *See, e.g., Gerety*, 589 P.2d. at 191-95.

Jurisdictions applying the materiality standard that have addressed whether a

medical provider has a duty to disclose provider-specific information are split into three

groups.  The first group rejects that the duty extends to provider-specific factors.  *See,*

*e.g., Duttry v. Patterson*, 771 A.2d 1255, 1259 (Pa. 2001).  The second group recognizes a

duty to disclose conflicts of interest.  *See Darke v. Estate of Isner*, 17 Mass. L. Rptr. 689,

2004 WL 1325635, at *2 (Mass. Super. Ct. 2004) (a financial interest in treatment

recommended to a patient); *D.A.B. v. Brown*, 570 N.W.2d 168, 171 (Minn. Ct. App. 1997)

(a prescription kickback scheme involving medication prescribed to the patient); *Moore*

*v. Regents of Univ. of Cal.*, 793 P.2d 479, 483 (Cal. 1990) (research, economic, and other

personal interests that may influence a provider's professional judgment). The final group recognizes a duty to disclose provider-specific circumstances bearing on the risk of receiving the consented-to treatment from that provider. *See, e.g., Andersen v. Khanna*, 913 N.W.2d 526, 542 (Iowa 2018) (a lack of experience and training in the procedure); *Goldberg v. Boon*, 912 A.2d 698, 717 (Md. Ct. App. 2006) (a lack of experience and more experienced practitioners nearby); *Howard v. Univ. of Med. & Dentistry of N.J.*, 800 A.2d 73, 84-85 (N.J. 2002) (misrepresenting experience in the procedure); *Johnson v. Kokemoor*, 545 N.W.2d 495, 504-05, 510 (Wis. 1996) (misrepresenting experience and not disclosing more experienced providers nearby); *Hidding v. Williams*, 578 So. 2d 1192, 1196-98 (La. Ct. App. 1991) (chronic alcoholism); *cf. Duffy v. Flagg*, 905 A.2d 15, 21 (Conn. 2006) (finding that a physician had no duty to disclose—in response to a question about difficulties in prior procedures—that a newborn had died during a prior procedure as there was no evidence that this previous bad outcome increased the risk that the procedure posed to the pregnant patient or her baby).

Most courts in this last group require or rely on expert testimony to show that the undisclosed provider-specific circumstance impacts the risk of receiving the consented-to treatment from the provider. *See Andersen*, 913 N.W.2d at 541-42; *Goldberg*, 912 A.2d at 703; *Howard*, 800 A.2d at 85; *Johnson*, 545 N.W. 2d at 499-500, 505, 510; *Hidding*, 578 So. 2d at 1198. *But see DeGennaro v. Tandon*, 873 A.2d 191, 195, 197 (Conn. App. Ct. 2005) (recognizing a duty to disclose that the provider had no prior experience

with the equipment used in the procedure, that no assistant would be present for the procedure in contravention of her usual practice, and that her facility was not open for business without mentioning whether the patient produced expert evidence about risks arising from these circumstances).

Plaintiff contends that an informed consent claim arises from Defendant's failure to disclose the following before obtaining his consent for the dental procedures, *see doc. 113* at 5: (i) Defendant's lack of malpractice insurance, *see doc. 113-1* at ¶¶ 2.a, 5; (ii) his inability to obtain insurance due to the number of malpractice claims against him in the past, *see id.* at ¶ 5; (iii) his need for more training in the implant procedure, *see id.* at ¶ 2.b; and (iv) the availability of more competent providers, *see id.* at ¶ 2.e.  The first non-disclosure (Defendant's lack of malpractice insurance) falls outside the duties to disclose recognized by courts in groups two and three and does not otherwise support an informed consent claim as a matter of law.  The remaining three non-disclosures mirror those that jurisdictions in the final group recognize as possible grounds for an informed consent claim.  *See, e.g., Andersen*, 913 N.W.2d at 537-38 (not disclosing a lack of experience and training); *Goldberg*, 912 A.2d at 717 (not disclosing inexperience or more experienced practitioners nearby).  Plaintiff, though, has not produced the expert evidence that all but one court in the final group requires to establish a duty to disclose these provider-specific factors, *see doc. 93-3*; *doc. 93-4*; *doc. 93-5*, and the provider-specific factors not disclosed here differ from the one instance where a court has recognized a

duty to disclose such factors without expert evidence.  Therefore, even if the New

Mexico Supreme Court were to expand the duty to disclose to include certain provider-

specific factors, Plaintiff's evidence is insufficient to establish a duty to disclose the

factors at issue here.

i.   NON-DISCLOSURE OF LACK OF MALPRACTICE INSURANCE

A lack of malpractice insurance is not one of the two provider-specific factors

that courts have obligated a provider to disclose.  It is not a conflict of interest and does

not implicate the concerns that have motivated courts to recognize a duty to disclose

such conflicts: the potential that other interests in the procedure might cloud a

provider's medical judgment, *see Moore*, 793 P.2d at 483.  Nor does a provider's lack of

malpractice insurance itself bear on the risk of receiving treatment from that provider

(although the reasons that a provider does not have insurance might).

For several reasons, the Court is skeptical that the New Mexico Supreme Court

would recognize a duty to disclose provider-specific factors, such as a lack of

malpractice insurance, that are not a conflict of interest and do not bear on the risk of

receiving the consented-to treatment from the provider.  First, the Court did not

encounter a single case in its research where a court has recognized a duty to disclose a

provider-specific factor that did not fit one of these two descriptions.  Plaintiff also cites

to no such case in his response. *See doc. 113*.  Second, courts recognizing a duty to

disclose provider-specific circumstances acknowledge the need to preserve a "logical

stopping point to what the doctrine of informed consent might encompass," *see Johnson*, 545 N.W. at 510, or a "gatekeeper function" in which courts "prevent insubstantial claims … from proceeding to a jury," *see Howard*, 800 A.2d at 85.  The argument "that a reasonably prudent person would like to know whether a physician had no malpractice insurance," *see doc. 113* at 5, untethered from a limiting principle for why a reasonably prudent person would want this information, obliterates any limit to the duty to disclose other than what a factfinder might deem unmaterial at trial.  *See Whiteside v. Lukson*, 947 P.2d 1263, 1265 (Wash. Ct. App. 1997) (observing that a doctrine of this breadth would sweep to include "the physician's own health, financial situation, [and] even medical school grades").  Given that the New Mexico Supreme Court found "'full disclosure' … obviously prohibitive and unrealistic" for procedure-specific factors, *see Gerety*, 589 P.2d at 193, 195, the Court doubts that it would adopt a duty to disclose provider-specific factors that extends to whatever a factfinder might deem material to a reasonable patient's decision and does not preserve any gatekeeping role for courts. Therefore, the Court concludes that Defendant had no duty to inform Plaintiff that he lacked malpractice insurance.

     ii.    Non-Disclosure of Need for More Training & Existence of More Skilled Providers

Turning to whether Defendant had a duty to tell Plaintiff about his need for more training in the procedures or the availability of more skilled providers nearby, the

Court concludes that even if the New Mexico Supreme Court were to follow the jurisprudence of courts in group three and recognize a duty to disclose provider-specific factors bearing on the risk of receiving the consented-to treatment from the provider, it would require expert evidence to establish that risk where the undisclosed provider-specific factor is a lack of training or the availability of a more skilled provider nearby.

As mentioned earlier, "experts are ordinarily indispensable" to establish a duty to disclose procedure-specific factors, as "medical facts are for medical experts." *Gerety*, 589 P.2d at 195. Medical facts include the risk to a patient from a provider's inexperience or lack of training in a procedure that he has performed previously. *See Howard*, 800 A.2d at 558; *cf. DeGennaro*, 873 A.2d at 195 (recognizing an informed consent claim without discussing expert testimony where the provider did not disclose that she had never performed the procedure with the tools at hand). They also include the risk to a patient arising from receiving treatment from a provider who has less experience or training in a procedure than other providers nearby. *Cf. Goldberg*, 912 A.2d at 703, 717 (relying on expert testimony to establish the risk to a patient from having a less-skilled provider perform a procedure); *Johnson*, 545 N.W. 2d at 499-500, 510 (same).

A provider's lack of training and the availability of more skilled providers nearby are distinct from the provider-specific circumstances not disclosed in *DeGennaro*

*v. Tandon*, 873 A.2d 191 (Conn. App. Ct. 2005)—the one case where a court has recognized an informed consent claim for not a disclosing provider-specific factors without requiring or referencing expert testimony about the risk those factors posed to the patient.  There, a dentist failed to inform a patient about the following circumstances that posed her a risk: the dentist's practice was not yet open for business; she had never performed the procedure using the tools at hand; and, in contravention of her usual practice, nobody would assist her with the procedure.  *See DeGennaro*, 873 A.2d at 194, 197.

The risks inherent in a provider performing a procedure with a set of tools for the first time without assistance in a closed facility may be so obvious that they fall "within the realm of the common knowledge of the average person" such that New Mexico courts would not require expert testimony to establish their existence.  *Cf. Toppino*, 673 P.2d at 1300-01 (holding that duty in a negligent treatment case could be established without expert evidence where a physician misplaced a breast implant five times, miscalculated its proper size, and another surgeon placed the implant correctly after a single procedure since an average person knows that an implant "should balance its healthy counterpart in size and location"); *Helfferich*, 2013 WL 7752644, at *2 (holding that duty in a negligent failure to treat case could be established without expert evidence where a dentist did not treat cavities that he knew a patient to have for more

than year despite the patient persistently complaining of pain and requesting treatment).

Risks arising from the provider's need for more training in a procedure or from receiving treatment from a given provider rather than a more skilled alternative are less obvious.  These risks require knowledge about the procedure's complexity and the extent to which the provider's experience and training give him the competency to perform that procedure and so are medical facts falling within the exclusive purview of experts.  *Cf. Andersen*, 913 N.W.2d at 540-41 (relying on expert testimony to show risks arising from a provider's lack of experience and training); *Howard*, 800 A.2d at 85 (same); *Johnson*, 545 N.W. 2d at 499-500, 505, 510 (same and also for risks arising a provider's lack of experience in comparison to other providers).

Therefore, Plaintiff needs expert evidence to establish any risk to him arising from Defendant's need for additional training in the implant procedure or from having Defendant perform the extraction and implant procedures rather than a more skilled provider.  As Plaintiff's expert offers no such evidence, *see doc. 93-3*; *doc. 93-4*; *doc. 93-5*, Plaintiff does not carry his burden to show that Defendant owed him a duty to disclose his need for additional training or the existence of more skilled providers nearby. Therefore, no informed consent claim arises from Defendant not doing so.

  iii. NON-DISCLOSURE OF INABILITY TO RENEW MALPRACTICE INSURANCE DUE
    NUMBER OF PRIOR CLAIMS

  Whether the New Mexico Supreme Court would find that a provider has a duty

to disclose an inability to obtain malpractice insurance due to the number of claims

against him is a more difficult question.  In *Duffy*, the Connecticut Supreme Court

implied that the negative outcomes from a provider's previous experiences with a

procedure could bear on the risks of undergoing that procedure with the provider.  *See*

905 A.2d at 21.  Expert testimony may not be required to establish these risks, as

calculating the chance of a bad result in a procedure performed by a given provider by

dividing the number of times that a provider has had a bad result in that procedure into

the number of times that the provider has performed that procedure could fall within

the realm of common knowledge.

  The bad results not disclosed here, though, are distinct from those in *Duffy* for at

least three reasons.  First, malpractice claims are a poor proxy for bad results as the

existence of a claim does not necessarily mean that a bad result (e.g., injury to the

patient) arose from the provider's conduct.  Second, there is no evidence here about the

specific bad outcomes that gave rise to the malpractice claims against Defendant.  *Cf. id.*

at 17 (identifying the undisclosed bad outcome as a uterine rupture during an

attempted vaginal birth after cesarean section delivery resulting in the death of the

infant).  Third, there is no evidence that the bad outcomes underlying these malpractice

claims arose from the same procedures that Defendant performed on Plaintiff.

Calculating the risk of a bad outcome from one procedure performed by a provider

based on the bad outcomes from other procedures performed by that provider is the

purview of medical experts since contrasting the skills and knowledge required for each

procedure requires specialized knowledge.

Therefore, even if the New Mexico Supreme Court were to follow *Duffy*'s

invitation and expand the duty to disclose to include malpractice claims, the Court

concludes that it would require both evidence about the specific bad outcomes

underlying those claims and expert evidence demonstrating that these outcomes bear

on the risk of undergoing the consented-to procedures at the provider's hand.  As

Plaintiff offers no such evidence here, *see docs. 93-3, 93-4, 93-5,* he has not borne his

burden of showing that Defendant owed him a duty to disclose that the number of prior

malpractice claims against him prevented him from renewing malpractice insurance.

### B.  CAUSATION

In addition to failing to establish a duty as a matter of fact or a matter of law,

Plaintiff also lacks the expert evidence needed to establish the causation element of an

informed consent claim arising from not disclosing each of the procedure-specific and

provider-specific factors discussed above.  Similar to establishing duty, expert

testimony about "the nature and seriousness of any impact upon the patient from risk

disclosure" is "ordinarily indispensable" to establishing whether "the non-disclosed

facts would have altered a reasonably prudent person's decision to undergo treatment."

*Gerety*, 589 P.2d at 194-95.  Plaintiff's expert offers no opinions about the effect that

disclosing any of factors discussed above would have on a reasonable patient's decision

to proceed with the extraction and implant procedures undergone by Plaintiff at

Defendant's hand.  *See docs 93-3, 93-4, 93-5*.  Therefore, Plaintiff has not borne his

burden of producing sufficient evidence to establish the causation element of an

informed consent claim arising from these non-disclosures.

## V.   CONCLUSION

For the reasons explained above, the Court GRANTS Defendant's Motion for

Summary Partial Judgment (*doc. 93*) and DISMISSES Plaintiff's informed consent claim

WITH PREJUDICE.  Plaintiff's claim for negligent performance of the dental procedures

is the only claim that remains.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**